**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTICT OF PENNSYLVANIA**

ROSSA PALLANTE, :
                             :     Civil Action No.  2:17-cv-01142-LDD
          Plaintiff, :
    v. :
                             :
CERTAIN :
UNDERWRITERS AT :
LLOYD'S, LONDON, :
                             :
         Defendant. :

**DEFENDANT, CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, SUBSCRIBING TO POLICY NO. WMPH00826's
(INCORRECTLY IDENTIFIED AS "THOSE CERTAIN UNDERWRITERS
AT LLOYDS, LONDON") ANSWER WITH AFFIRMATIVE DEFENSES AND
COUNTERCLAIMS TO PLAINTIFF ROSSA PALLANTE'S COMPLAINT**

    Defendant Certain Underwriters at Lloyd's, London, subscribing to Policy No.

WMPH00826 (incorrectly identified as "Those Certain Underwriters at Lloyds, London")

(hereinafter "Certain Underwriters"), by and through its attorneys, Wright & O'Donnell,

P.C., hereby Answers the Plaintiff Rossa Pallante's Complaint, with Affirmative

Defenses and Counterclaims, and in support thereof, states as follows:

    1.    Denied.  The averments in this paragraph refer to an entity other than

Answering Defendant and therefore no answer is required.

    2.    Denied.  At the time this action was commenced, and at the present time,

Certain Underwriters is a society of members, corporate and individual, who underwrite

in syndicates, which are lawfully engaged in the business of underwriting insurance

policies, authorized to conduct business within the State of New Jersey and the

Commonwealth of Pennsylvania, and with regard to the applicable policy of insurance at issue, are not residents of the State of New Jersey or the Commonwealth of Pennsylvania.

3.     Admitted in part; denied in part.   It is admitted only that Certain Underwriters issued a policy of insurance to Plaintiff covering the property located at 243 8th Street South, Brigantine, New Jersey 08203.   The remaining allegations are denied. Specifically, the applicable policy of insurance and declarations page incorporated by Plaintiff in her Complaint as Exhibit "A" are writings which speak for themselves. Therefore, any characterizations thereof are specifically denied and strict proof is demanded at the time of trial.

4.     Denied.  The averments contained in this paragraph state conclusions of law to which no answer is required in accordance with the applicable Federal Rules of Civil Procedure.  Moreover, the applicable policy of insurance and preliminary estimate of damage to contents incorporated by Plaintiff in her Complaint as Exhibit "B" are writings which speak for themselves.   Therefore, any characterizations thereof are specifically denied and strict proof is demanded at the time of trial.

5.     Denied.   The averments contained in this paragraph state conclusions of law to which no answer is required in accordance with the applicable Federal Rules of Civil Procedure.  Answering further, it is specifically denied that Plaintiff fully complied with all of the terms and conditions required by the Policy.

6.     Denied.

7.     Denied.

**WHEREFORE,** Defendant, Certain Underwriters at Lloyd's, London, subscribing to Policy No. WMPH00826, demands judgment in its favor and against the

Plaintiff Rossa Pallante, and requests that Plaintiff's Complaint be dismissed **WITH PREJUDICE,** together with court costs and counsel fees, as well as other relief that this Court deems just and proper.

## COUNT I
### In Assumpsit – Breach of Contract

8.      Certain Underwriters incorporates by reference all previous paragraphs as though fully set forth herein at length.

9.      Denied.  The averments contained in this paragraph state conclusions of law to which no answer is required in accordance with the applicable Federal Rules of Civil Procedure.  By way of further answer, to the extent that an answer is deemed required, the applicable policy of insurance is a writing which speaks for itself.  Any characterizations thereof are denied and strict proof is demanded at trial.

10.      Denied.  The averments contained in this paragraph state conclusions of law to which no answer is required in accordance with the applicable Federal Rules of Civil Procedure.  By way of further answer, to the extent that an answer is deemed required, the applicable policy of insurance is a writing which speaks for itself.  Any characterizations thereof are denied and strict proof is demanded at trial.

11.      Denied.

12.      Denied.  The averments contained in this paragraph state conclusions of law to which no answer is required in accordance with the applicable Federal Rules of Civil Procedure.  By way of further answer, to the extent that an answer is deemed required, Answering Defendant did not breach the applicable policy of insurance.

**WHEREFORE,** Defendant, Certain Underwriters at Lloyd's, London, subscribing to Policy No. WMPH00826, demands judgment in its favor and against the

Plaintiff Rossa Pallante, and requests that Plaintiff's Complaint be dismissed **WITH PREJUDICE,** together with court costs and counsel fees, as well as other relief that this Court deems just and proper.

## COUNT II
### In Trespass – 42 Pa. C.S.A. § 8371

13.     Certain Underwriters incorporates by reference all previous paragraphs as though fully set forth herein at length.

14.     Denied.  The averments contained in this paragraph state conclusions of law to which no answer is required in accordance with the applicable Federal Rules of Civil Procedure.

15 (a-m).  Denied.  The allegations in this paragraph contain conclusions of law to which no answer is required.  By way of further response, the allegations in this paragraph refer to a policy of insurance and correspondence incorporated by Plaintiff in her Complaint as Exhibit "C" which are writings which speak for themselves.  Therefore, any characterizations thereof are specifically denied and strict proof is demanded at the time of trial.  Moreover, it is specifically denied that Plaintiff's alleged contents loss is covered under the policy of insurance.

16.     Denied.

**WHEREFORE,** Defendant Certain Underwriters at Lloyd's, London, subscribing to Policy No. WMPH00826, demands judgment in its favor and against the Plaintiff Rossa Pallante, and requests that Plaintiff's Complaint be dismissed **WITH PREJUDICE,** together with court costs and counsel fees, as well as other relief that this Court deems just and proper.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Certain Underwriters incorporates herein by reference as though fully set forth at length all limitations, bars, preclusions, exclusions, deductibles and other provisions, terms and conditions in the policy of insurance between Certain Underwriters and Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

Defendant has paid all monies due and owed to Plaintiff as a result of the loss.

### FOURTH AFFIRMATIVE DEFENSE

Some or all of the damages claimed by Plaintiff are not recoverable under the policy of insurance and/or the applicable law.

### FIFTH AFFIRMATIVE DEFENSE

Some or all of the damages claimed by Plaintiff are not recoverable because the damages are excessive and unreasonable.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff cannot maintain a claim for bad faith because there is no coverage under the applicable policy of insurance.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff cannot maintain a claim for bad faith because Certain Underwriters acted reasonably at all times.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff cannot maintain a claim for bad faith because Certain Underwriters paid substantial monies on the insurance claim.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff cannot maintain a claim for bad faith as a matter of law because Certain Underwriters relied upon the advice, opinions, and conclusions of independent experts.

## TENTH AFFIRMATIVE DEEFNSE

Plaintiff's claims are barred and/or limited by the doctrine of Reverse Bad Faith and/or Comparative Bad Faith.

## ELEVENTH AFFIRMATIVE DEFENSE

The insurance policy should be voided because Plaintiff made misrepresentations on her application for insurance, during the application process, and/or during Certain Underwriters' adjustment of the claim.

## TWELFTH AFFIRMATIVE DEFENSE

Certain Underwriters reserves the right to assert all affirmative defenses revealed through discovery.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any monies because her claim is not covered by the policy of insurance.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim is not covered by the insurance policy because she intentionally made misrepresentations of material fact during the adjustment and investigation of the insurance claim, including misrepresentations concerning a contents list submitted on

July 2, 2016, as well as misrepresentations concerning photographs submitted in support of her contents loss.

## FIFTEENTH  AFFIRMATIVE DEFENSE

Certain Underwriters properly disclaimed coverage for Plaintiff's claim after it uncovered the false statements, intentional concealment, and/or misrepresentations of material facts by Plaintiff.

## SIXTEENTH AFFIRMATIVE DEFENSE

This is an inconvenient forum for the litigation of these claims.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Venue is improper in this Court.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred under the doctrine of waiver or estoppel.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statute(s) of limitation and/or by prescription.

## TWENTIETH AFFIRMATIVE DEFENSE

This Court lacks personal jurisdiction over Certain Underwriters.

## COUNTERCLAIMS OF DEFENDANT CERTAIN UNDERWRITERSAT LLOYD'S, LONDON, SUBSCRIBING TO POLICY NO. WMPH00826 (INCORRECTLY IDENTIFIED AS "THOSE CERTAIN UNDERWRITERS AT LLOYDS, LONDON") AGAINST PLAINTIFF ROSSA PALLANTE

Defendant, Certain Underwriters at Lloyd's, London, subscribing to Policy No. WMPH00826 (incorrectly identified as "Those Certain Underwriters at Lloyds, London") (hereinafter "Certain Underwriters") hereby files Counterclaims against Plaintiff Rossa Pallante, and in support thereof states as follows:

## I.    INTRODUCTION

1.      This is an action for rescission, declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, statutory insurance fraud, and common law fraud by Defendant Certain Underwriters at Lloyd's, London, subscribing to Policy No. WMPH00826 (incorrectly identified as "Those Certain Underwriters at Lloyds, London") (hereinafter "Certain Underwriters") against Plaintiff Rossa Pallante (hereinafter "Plaintiff"), seeking rescission of the insurance policy issued by Certain Underwriters to Plaintiff, a declaration of Certain Underwriters' rights and duties and/or obligations under said policy, and recovery pursuant to the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17.33A-7 *et seq.*, and common law fraud.

## II.    STATEMENT OF THE PARTIES

2.      Certain Underwriters is a society of members, corporate and individual, who underwrite in syndicates, which are lawfully engaged in the business of underwriting insurance policies, authorized to conduct business within the Commonwealth of Pennsylvania and the State of New Jersey, and with regard to the applicable policy of insurance at issue, are not residents of the State of New Jersey or the Commonwealth of Pennsylvania.

3.      Plaintiff is an adult individual who alleges in her Complaint to be a resident of the Commonwealth of Pennsylvania, with a current residence at 833 S. 3rd Street, Philadelphia, Pennsylvania 19147.

4.      However, upon information and belief, Certain Underwriters believes and therefore avers that 833 S. 3rd Street, Philadelphia, Pennsylvania 19147 is not Plaintiff's residence, but her principle business address.

5.     Certain Underwriters believes and therefore avers that at all times material hereto, Plaintiff was a citizen and resident of the State of New Jersey, with a primary residence at 243 8th Street South, Brigantine, New Jersey 080203.

## III.   JURISDICTION AND VENUE

6.     On or about March 15, 2017, Certain Underwriters  filed a Notice of Removal from the Court of Common Pleas, Philadelphia County, to United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1332(a)(2) based on diversity of citizenship between Certain Underwriters, which is a society of members, corporate and individual, who underwrite in syndicates, formed under, in accordance with, and/or pursuant to the laws of the United Kingdom and maintaining a principle place of business in London, United Kingdom, and Plaintiff, residing within the State of New Jersey and/or the Commonwealth of Pennsylvania within the United States.

7.     Plaintiff's claims against Certain Underwriters involve an amount in controversy in excess of the jurisdictional limit of $75,000.00.

8.     On or about March 21, 2017, Certain Underwriters filed a Motion to Dismiss, or in the Alternative, Transfer Venue to the United States District Court for the District of New Jersey in Camden, New Jersey, pursuant to 28 U.S.C. § 1404(a), as the Premises and all of the witnesses are situated entirely in the District of New Jersey.

9.     By Order dated June 13, 2017, this Honorable Court denied Certain Underwriters' Motion to Dismiss or, in the Alternative, Transfer Venue.

10.     Accordingly, per this Court's Order, venue is properly placed in United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391.

11.     Jurisdiction of the Counterclaim is properly before this Court pursuant to Fed.R.Civ.P. 13(a), as the Counterclaim arises out of the same transaction or occurrence that is the subject matter of Plaintiff's Complaint.

12.     All of the communications, as well as the false or fraudulent statements, police reports, photographs, and testimony forming the subject matter of Certain Underwriters' Counterclaim concern an insurance claim on property located in the State of New Jersey and/or were directed by Plaintiff, from and/or into the State of New Jersey by sending fraudulent documents by facsimiles, regular mail and/or electronic mail, as well as transmitting those false and fraudulent statements and documents for payment to Certain Underwriters.

## III.     **STATEMENT OF THE COUNTERCLAIMS**

13.     At all relevant times hereto, Certain Underwriters issued Plaintiff a primary homeowners' insurance policy with an effective policy period of June 8, 2015, to June 8, 2016, bearing Policy No. WMPH00826) (hereinafter the "Policy"), for a property located at 243 8th Street South, Brigantine, New Jersey 080203 (hereinafter the "Premises").  A true and correct copy of the Declarations Page and Policy are attached hereto as Exhibit "A."

14.     On or about March 4, 2016, upon information and belief, the Premises was involved in a fire loss, which was extinguished by the Brigantine Fire Department.

15.     At the time of the fire loss, Plaintiff was not at the Premises and was allegedly in Philadelphia viewing a play with friends.

16.     On or about March 7, 2016, Plaintiff submitted a claim to Certain Underwriters under the Policy for the March 4, 2016 fire loss.

17.     On March 10, 2016, three days after Plaintiff reported the loss to Certain Underwriters, Certain Underwriters sent Vanguard Adjusters Group, Inc. (hereinafter "Vanguard") Adjuster Adam Foster to meet with Plaintiff, inspect/adjust the Premises damage, and investigate the cause of loss.

18.     At the time of the inspection, Plaintiff advised Adjuster Foster that she noticed that the Brigantine Fire Department had only partially boarded-up the Premises after extinguishing the fire.

19.     As a result of same, Plaintiff advised Adjuster Foster that she believed that a theft occurred at the Premises sometime between March 5, 2016 and March 10, 2016.

20.     Adjuster Foster advised Plaintiff to submit a separate theft claim for any items not covered within Vanguard's personal property adjustment of the fire loss.

21.     The Policy issued by Certain Underwriters to Plaintiff provides $187,500.00 of personal property insurance. *See* Exhibit "A."

22.     Specifically the Policy states:

> **C.  Coverage C Personal Property**
> **1.  Covered Property**
>    We cover personal property owned or used by an "insured" while
>    it is anywhere in the world.

*See* Exhibit "A" at p. 3.

23.     The Policy requires that an insured comply with certain conditions as a prerequisite of coverage under the Policy.

24.     The Policy states, in pertinent part:

**B. Duties After Loss**
In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either;
1. Give prompt notice to us or our agent;
2. Notify the police in case of loss by theft;
*                   *                   *
4. Protect the property from further damage. If repairs to the property are required, you must;
a. Make reasonable and necessary repairs to protect the property; and
b. Keep an accurate record of repair expenses;
5. Cooperate with us in the investigation of a claim;
6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
7. As often as we reasonably require;
a. Show the damaged property;
b. Provide us with records and documents we request and permit us to make copies; and
c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;
8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief;
a. The time and cause of loss;
b. The interests of all "insureds" and all others in the property involved and all liens on the property;
c. Other insurance which may cover the loss;
d. Changes in title or occupancy of the property during the term of the policy;
e. Specifications of damaged buildings and detailed repair estimates;
f. The inventory of damaged personal property described in 6. above;
g. Receipts for additional living expenses incurred and records that support the fair

rental value loss;

       *                        *                        *

*See* Exhibit "A" at p. 13.

25.     On or about April 21, 2016, Certain Underwriters issued advance payments to Plaintiff in the amount of $25,000.00 in dwelling coverage and $10,000.00 in personal property coverage.

26.     Upon information and belief, these two advance payment check drafts were received and cashed by Plaintiff.

27.     Subsequently, Vanguard Adjuster Robert Fleckenstein assumed responsibility for the adjustment of Plaintiff's claims.

28.     Vanguard concluded from their inspection and adjustment that Plaintiff's Premises was a total loss.

29.     Vanguard prepared a dwelling estimate of loss for Plaintiff's Premises with a replacement cost value ("RCV") of $415,995.20 less depreciation of $61,728.04 for an actual cash value ("ACV") of $354,267.16.

30.     Vanguard calculated that Plaintiff had a dwelling estimate of loss balance of $326,767.16.

31.     This balance was based the RCV of $415,995.20, less the Policy's $2,500.00 deductible, less depreciation of $61,728.04 and the prior dwelling advance payment of $25,000.00.

32.     Vanguard had not completed a finalized personal property estimate of loss, because it was still awaiting Plaintiff's personal property itemized list.

33.     On or about July 2, 2016, Plaintiff sent Adjuster Fleckenstein a twenty-seven (27) page facsimile containing personal property items which were allegedly damaged in the fire and/or stolen in the subsequent theft.

34.     Submitted within the facsimile was a Brigantine, New Jersey Police Department Property Loss Report and Statement completed by Plaintiff.

35.     The Statement was completed, signed and dated by Plaintiff on May 2, 2016, and stated in pertinent part:

> On March 10th[sic] Fireman Fugoli met me at [the subject premises] we both found the back [two] 2 sliding glass doors ajar.  I was not able to file a report until today because I had no transportation to Brigantine.  My insurance [carrier] was notified of the theft at that time.

36.     The Property Loss Report identified eleven (11) items allegedly stolen from the  subject premises totaling $58,590.00:

1.     Titanium Bike $3,000.00;
2.     Louis Vuitton shoulder carrier $3,200.00;
3.     Louis Vuitton shoulder bag $3,500.00;
4.     Louis Vuitton suit bag $2,800.00;
5.     Louis Vuitton pet carrier $3,800.00;
6.     Louis Vuitton large duffle bag $3,000.00;
7.     Louis Vuitton purse $2,200.00;
8.     Movado watch $2,000.00;
9.     Fire Box Safe $90.00;
10.    Passport, citizen papers, and jewelry valued at over $25,000.00; and
11.    Expensive clothing valued over $10,000.00.

37.     While Vanguard finalized its personal property estimate of loss, on July 14, 2016, Certain Underwriters issued payment to Plaintiff in the amount of $326,767.16, which was the balance remaining on the aforementioned Vanguard dwelling estimate of loss.

38.    Upon information and belief, the payment check draft of $326,767.16 was received and cashed by Plaintiff.

39.    On August 10, 2016, August 11, 2016 and August 22, 2016, Plaintiff submitted numerous electronic-mail correspondences to Certain Underwriters' agents enclosing photographs in support of her fire and theft claims.

40.    Following the submittal of the photographs, she was asked to clarify if any of the provided photographs showed any items which were replaced after the fire and theft losses.

41.    Plaintiff responded to same, "No have not replaced any thing[*sic*][.]"

42.    The adjusters assigned to Plaintiff's fire and theft claims believed there were several inconsistencies regarding the items Plaintiff alleged were damaged and/or stolen.

43.    Due to these inconsistencies, as well as the recently submitted photographs of several high-end luxury items allegedly stolen from the Premises following the March 4, 2016 fire loss, Certain Underwriters requested a statement by Plaintiff.

44.    The Policy allows Certain Underwriters to taken an Examination Under Oath of any of its insureds following a submitted claim. *See* Exhibit "A" at p. 13.

45.    Certain Underwriters requested an Examination Under Oath and retained legal counsel to conduct the Examination Under Oath.

46.    On September 13, 2016, Certain Underwriters' legal counsel conducted an Examination Under Oath of Plaintiff.

47.     One of the areas of inquiry during the Examination Under Oath was Plaintiff's alleged personal property loss regarding the theft claim.

48.     During the Examination Under Oath, Plaintiff made numerous intentional material misrepresentations about the property that she allegedly lost in the fire and theft, including, but not limited to, those items identified in the Brigantine, New Jersey Police Department Property Loss Report and Statement of May 2, 2016.

49.     Specifically, Plaintiff fraudulently misrepresented that she lost one piece of Louis Vuitton luggage in the fire and six pieces of Louis Vuitton luggage in the theft. A true and correct copy of Plaintiff's Examination Under Oath Transcript is attached hereto as Exhibit "B".

50.     During the Examination Under Oath, Plaintiff admitted that she could not provide any proof of payment for any of the seven Louis Vuitton pieces she claimed were missing following the fire and theft loss.

51.     Plaintiff also made fraudulent misrepresentations about other items of personal property that she alleges were stolen from the Brigantine, New Jersey property.

52.     Additionally, Plaintiff fraudulently misrepresented that the photographs that she provided in support of her fire and theft claims were all taken prior to the March 4, 2016 fire loss.

53.     Accordingly, Plaintiff provided false and fraudulent information in support of insurance claims with Certain Underwriters that the photographs she provided in support of her claim were taken prior to the March 4, 2016 fire loss.

54.     Plaintiff violated the terms of the Policy when she provided false and fraudulent information in support of her fire and theft claims.

55.    By virtue of her material false and fraudulent statements regarding the fire and theft claims, Plaintiff violated the "Concealment or Fraud" provision of the Policy under which Plaintiff seeks coverage.

56.    The "Concealment or Fraud" provision of the Policy state as follows:

**SECTION I CONDITIONS**

\* \* \*

**Q. Concealment or Fraud.**
We provide coverage to no "insureds" under
this policy if, whether before or after a loss,
an "insured" has:
1.  intentionally concealed or misrepresented
any material fact or circumstance;
2.  engaged in fraudulent conduct; or
3.  made false statements
relating to this insurance.
\* \* \*

*See* Exhibit "A" at pp. 15-16.

57.    By letter dated January 20, 2017, Certain Underwriters notified Plaintiff that it was denying Plaintiff's claims based on her material misrepresentations, concealment of material facts, and false statements made in support of her insurance claims, as said material misrepresentations and false statements violated the "Concealment or Fraud" provision of the Policy.   A true and correct copy of Certain Underwriters' Denial Letter dated January 20, 2017, is attached hereto as Exhibit "C."

58.    On February 14, 2017, Plaintiff commenced the instant action in the Philadelphia County Court of Common Pleas.

59.    On or about March 15, 2017, Certain Underwriters  filed a Notice of Removal from the Court of Common Pleas, Philadelphia County, to United States

District Court for the Eastern District of Pennsylvania, under and pursuant to 28 U.S.C. § 1332(a)(2).

## COUNT I

### DEFENDANT, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO POLICY NO. WMPH00826 (INCORRECTLY IDENTIFIED AS "THOSE CERTAIN UNDERWRITERS AT LLOYDS, LONDON") AGAINST PLAINTIFF ROSSA PALLANTE

### RESCISSION

60.     Certain Underwriters incorporates all previous paragraphs as though fully set forth herein at length.

61.     Plaintiff submitted a claim to Certain Underwriters for personal property allegedly lost in a fire and theft occurring at the Brigantine, New Jersey Premises.

62.     Plaintiff reported that the alleged theft occurred sometime between March 4, 2016 and March 10, 2016.

63.     On May 2, 2016, Plaintiff completed and signed a Brigantine, New Jersey Police Department Property Loss Report and Statement identifying items of personal property that were allegedly stolen from the premises.

64.     This personal property included a Titanium Bike $3,000.00; Louis Vuitton shoulder carrier $3,200.00; Louis Vuitton shoulder bag $3,500.00; Louis Vuitton suit bag $2,800.00; Louis Vuitton pet carrier $3,800.00; Louis Vuitton large duffle bag $3,000.00; Louis Vuitton purse $2,200.00; Movado watch $2,000.00; Fire Box Safe $90.00; Passport, citizen papers, and jewelry valued at over $25,000.00; and Expensive clothing valued over $10,000.00.   Plaintiff was unable to provide any receipts or proofs of purchase for the items.

65.     Subsequently, Plaintiff submitted to Certain Underwriters a number of photographs of her personal property in support of her fire and theft claims.

66.     Plaintiff reported she had taken the photos of her belongings "for insurance purposes."

67.     Plaintiff represented that all the photographs submitted in support of her claim were of items that were lost in the fire or the theft.

68.     Plaintiff confirmed in writing that none of the photographs provided depicted items that she had purchased to replace any of her belongings lost in the fire or theft.

69.     Certain Underwriters requested an Examination Under Oath and retained legal counsel to conduct the Examination Under Oath.

70.     On September 13, 2016, Certain Underwriters' legal counsel conducted an Examination Under Oath of Plaintiff.

71.     During her Examination Under Oath Plaintiff was shown copies of multiple photographs that she had submitted in support of her fire and theft claims.

72.     During the Examination Under Oath, Plaintiff made numerous fraudulent misrepresentations about the property that she allegedly lost in the fire and theft.

73.     Specifically, Plaintiff fraudulently misrepresented that she lost one piece of Louis Vuitton luggage in the fire and six pieces of Louis Vuitton luggage in the theft. A true and correct copy of Plaintiff's Examination Under Oath Transcript is attached hereto as Exhibit "B".

74.     Throughout the Examination Under Oath, Plaintiff could not provide any proof of payment for any of the seven Louis Vuitton pieces she claimed were missing following the fire and theft loss.

75.     Plaintiff also made fraudulent misrepresentations about other items of personal property that she alleges were stolen from the Brigantine, New Jersey property.

76.     Additionally, Plaintiff fraudulently misrepresented that the photographs that she provided in support of her fire and theft claims were all taken prior to the March 4, 2016 fire loss.

77.     Plaintiff willfully, intentionally. and falsely misled Certain Underwriters by advising Certain Underwriters that the personal property shown in the provided photographs were taken prior to the March 4, 2016 fire loss.

78.     Hence, Plaintiff irrefutably lost rights that she was entitled to under the Policy as a result of knowingly fraudulent conduct.

79.     Plaintiff has engaged in false, fraudulent, and misleading misrepresentations with regard to submitting fraudulent documents by facsimile, regular mail, and/or electronic mail to Certain Underwriters related to her fire and theft claims.

80.     Plaintiff has violated the Policy by mispresenting and concealing material facts in connection with the March 4, 2016 fire loss and subsequent theft loss allegedly occurring between March 4, 2016 and March 10, 2016.

81.     As a result of the false, fraudulent, and intentional conduct of Plaintiff, Certain Underwriters has been harmed by providing payment on Plaintiff's alleged claims, incurring costs of investigation, attorney's fees, costs to conduct an Examination Under Oath, and expert fees, all to its great detriment and loss.

82.     As a result of Plaintiff's foregoing false, fraudulent, and intentional conduct, it is respectfully submitted that Certain Underwriters is permitted to rescind Plaintiff's Policy, as of March 10, 2016, the date of the first fraudulent utterance committed by Plaintiff when she represented to Vanguard Adjuster Adam Foster that the Premises contained personal property not accounted for in the fire loss, and that several items were missing or stolen due to an alleged theft at the Premises.

83.     The total claims paid by Certain Underwriters related to Plaintiff's fire and theft loss occurring within and/or during the policy period have a total value of $361,767.16.

84.     Based on the false, fraudulent, and misleading conduct of Plaintiff, it is respectfully submitted that Certain Underwriters is permitted to rescind the Policy, thereby precluding insurance coverage for any of the claims and/or insurance payments made after March 10, 2016.

85.     Pursuant to the equitable remedy of rescission, Certain Underwriters will offset any sums recoverable hereunder from the pro-rated premiums for the Policy from March 10, 2016, the date of the initial fraud, through to June 8, 2016.

**WHEREFORE,** Defendant, Certain Underwriters at Lloyd's, London, subscribing to Policy No. WMPH00826 (incorrectly identified as "Those Certain Underwriters at Lloyds, London") respectfully requests that this Honorable Court enter judgment in its favor and rule that the Policy issued to Plaintiff Rossa Pallante is hereby rescinded and rendered void as of March 10, 2016.

## COUNT II

### DEFENDANT, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO POLICY NO. WMPH00826 (INCORRECTLY IDENTIFIED AS "THOSE CERTAIN UNDERWRITERS AT LLOYDS, LONDON") AGAINST PLAINTIFF ROSSA PALLANTE

### <u>DECLARATORY JUDGMENT</u>

86. Certain Underwriters incorporates all previous paragraphs as though fully set forth herein at length.

87. Certain Underwriters seeks a declaration that it owes no obligation to Plaintiff based on her knowingly false and fraudulent conduct with regard to the fraudulent verbal statements, documentation, photographs, and Examination Under Oath testimony for the purpose of attempting to obtain recovery under the Policy for the March 4, 2016 fire loss and subsequent theft loss allegedly occurring between March 4, 2016 and March 10, 2016.

88. Specifically, Plaintiff fraudulently misrepresented that she lost one piece of Louis Vuitton luggage in the fire and six pieces of Louis Vuitton luggage in the theft.

89. Plaintiff also made fraudulent misrepresentations about other items of personal property that she alleges were stolen from the Brigantine, New Jersey property.

90. Plaintiff fraudulently misrepresented that the photographs that she provided in support of her fire and theft claims were all taken prior to the March 4, 2016 fire loss.

91. As a result, Certain Underwriters seeks a declaration under 22 U.S.C. § 2201 *et seq.*, that the Policy issued to Plaintiff is hereby rendered null and void as of

March 10, 2016, the date of the first fraudulent utterance with respect to property loss she sustained in the fire and theft claims.

92.     Based on the knowingly false and fraudulent misrepresentations made by Plaintiff in connection with the March 4, 2016 fire loss and subsequent theft loss allegedly occurring between March 4, 2016 and March 10, 2016, it is respectfully submitted that Certain Underwriters has no contractual obligation or liability under and/or pursuant to the Policy issued to Plaintiff for losses and/or payments to Plaintiff under the insurance policy following the effective date of rescission, March 10, 2016.

93.     For the foregoing reasons, it is respectfully requested that the Policy should be rendered null and void as of March 10, 2016, with a determination that there is no coverage for any and all claims under the insurance Policy issued by Certain Underwriters to Plaintiff.

**WHEREFORE,** Defendant, Certain Underwriters at Lloyd's, London, subscribing to Policy No. WMPH00826 (incorrectly identified as "Those Certain Underwriters at Lloyds, London") respectfully requests that this Honorable Court enter a declaration that Certain Underwriters owes no contractual obligation under/or pursuant to the Policy issued to Plaintiff Rossa Pallante based on the fact the Policy is null and void as of March 10, 2016.

## COUNT III

**DEFENDANT, CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, SUBSCRIBING TO POLICY NO. WMPH00826
(INCORRECTLY IDENTIFIED AS "THOSE CERTAIN UNDERWRITERS
AT LLOYDS, LONDON") AGAINST PLAINTIFF ROSSA PALLANTE**

**STATUTORY CLAIM FOR INSURANCE FRAUD UNDER THE NEW JERSEY
<u>INSURANCE FRAUD PREVENTION ACT, N.J.S.A. 17:33A-7</u>**

94.     Certain Underwriters incorporates all previous paragraphs as though fully set forth herein at length.

95.     A person violates the New Jersey Insurance Fraud Prevention Act ("IFPA"), N.J.S.A. 17:33A-1 to -30, if he or she:

> Presents or causes to be presented any written or oral statements as part of, or in support or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim.

N.J.S.A. 17:33-A-4(a)(1).

96.     Other violations of the IFPA include, but are not limited to, concealing or knowingly failing to disclose information concerning a person's initial or continued right or entitlement to benefits.  N.J.S.A. 17:33A-4(a)(3).

97.     The IFPA entitles insurance companies, such as Certain Underwriters, that have been damaged as a result of the violation of the IFPA, to bring a civil action to recover compensatory damages, including reasonable investigation costs, costs of suit, and attorneys' fees.  N.J.S.A. 33A-7A.

98.     As a result of the knowingly false and fraudulent conduct of Plaintiff with regard to submitting false and fraudulent verbal statements, documentation, photographs, and Examination Under Oath testimony, for insurance coverage on her fire and theft claims, Certain Underwriters has sustained damages.

99.     Certain Underwriters' damages include actual damages of $364,267.16 (payment on Plaintiff's alleged claims), plus costs, fees, expenses, attorney's fees, expert fees, and court costs.

100.   Plaintiff presented verbal statements, documentation, photographs, and Examination Under Oath testimony in pursuit of insurance claims related to losses allegedly occurring on March 4, 2016, through March 10, 2016, with full knowledge and awareness that the proofs provided in support of her claims contained false, fraudulent, and misleading information.

101.   As a result of the pattern of violations of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 *et seq.*, Certain Underwriters has been harmed by incurring costs of investigation, expert fees, attorney's fees, cost of suit, and other investigation expenses.

102.   Additionally, Certain Underwriters seeks the recovery of treble damages pursuant to N.J.S.A. 17:33A-7(b) against Plaintiff.

**WHEREFORE,** Certain Underwriters at Lloyd's, London, subscribing to Policy No. WMPH00826 ("Certain Underwriters") demands judgment in its favor and against Plaintiff Rossa Pallante for her violation of the New Jersey Insurance Fraud Prevention Act, in an amount equivalent to actual damages, the cost of suit, attorney's fees, expert fees, reasonable investigation expenses, interest, punitive damages, and treble damages as allowed by the New Jersey Insurance Fraud Prevention Act.

### COUNT IV

**DEFENDANT, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO POLICY NO. WMPH00826 (INCORRECTLY IDENTIFIED AS "THOSE CERTAIN UNDERWRITERS AT LLOYDS, LONDON") AGAINST PLAINTIFF ROSSA PALLANTE**

### COMMON LAW FRAUD

103.   Certain Underwriters incorporates all previous paragraphs as though fully set forth herein at length.

104.    Plaintiff had a legal obligation to provide Certain Underwriters with true and accurate information during the adjustment of her insurance claims.

105.    At all times relevant hereto, Plaintiff knowingly and intentionally submitted false and fraudulent information, as outlined above, in support of her insurance claims.

106.    The Plaintiff presented written and oral statements in pursuit of her insurance claims with full knowledge and awareness that the statements contained false and misleading information.

107.    By mispresenting her personal property loss to Certain Underwriters, Plaintiff intended to induce Certain Underwriters into making claim payments that it would not have paid under the Policy based on Plaintiff's violation of the "Concealment or Fraud" provision within the Policy.  *See* Exhibit "A" at pp. 15-16.

108.    Plaintiff intentionally mispresented the personal property lost in the fire and theft claims to receive insurance payment under the Policy she was not entitled to receive.

109.    At all times material hereto, Certain Underwriters justifiably relied upon the misrepresentations of Plaintiff regarding its adjustment of her fire and theft claims, and issued payment on an insurance claim to Plaintiff.

110.    As a proximate result of the fraudulent misrepresentations by Plaintiff regarding the value and extent of her personal property loss, Certain Underwriters suffered damages.

111.    Plaintiff knowingly mispresented the value of her claims for the sole purpose of defrauding Certain Underwriters into paying more monies on her insurance claims.

112.    As a result of Plaintiff's pattern of fraud and misrepresentation, Certain Underwriters has been harmed in an amount exceeding $364,267.16 (the payment on Plaintiff's alleged claims), plus adjuster's and investigator's fees, attorney's fees, expert fees, and court costs.

113.    Additionally, Certain Underwriters seeks recovery of punitive damages against Plaintiff for the fraudulent conduct engaged in by Plaintiff with respect to her insurance claims.

**WHEREFORE,** Certain Underwriters at Lloyd's, London, subscribing to Policy No. WMPH00826 ("Certain Underwriters") demands judgment in its favor and against Plaintiff Rossa Pallante in an amount equivalent to actual damages, the cost of suit, attorney's fees, reasonable investigation expenses, interest, punitive damages, and treble damages.

**WRIGHT & O'DONNELL, P.C.**

BY: _____

        Lawrence D. Wright
        Christopher P. Kelly
        PA ID No. 46531, 74316
        Attorneys for Defendant,
        Certain Underwriters at Lloyd's, London,
        subscribing to Policy No. WMPH00826
        15 E. Ridge Pike, Suite 570
        Conshohocken, PA  19428
        Telephone: (610) 940-4092
        Facsimile: (610) 940-4001
        E-mail: lwright@wright-odonnell.com
        E-mail: ckelly@wright-odonnell.com

DATED:  July 24, 2017