IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROSSA PALLANTE             :         CIVIL ACTION
                                 :
       v.                :
                                 :
THOSE CERTAIN UNDERWRITERS AT  :        NO. 17-1142
LLOYD'S, LONDON             :

MEMORANDUM

Bartle, J.                              August 21, 2018

       This is a diversity action involving coverage under a homeowners insurance policy. Plaintiff Rossa Pallante claimed that her insurer, defendant Those Certain Underwriters at Lloyd's, London ("Lloyd's"),[1] had not paid her all that was due for fire and theft losses and had acted in bad faith. Pallante's complaint has been dismissed for lack of prosecution.[2] In its counterclaim which remains, Lloyd's alleges that Pallante committed fraud under the common law and a New Jersey statute. Lloyd's seeks rescission of the insurance policy, a declaratory judgment, and recovery of $361,767.16 in damages which it had already paid to Pallante before the fraud became known. Before the court is the motion of Lloyd's for summary judgment on its

_____

1. Lloyd's notes that it is correctly identified as "Certain Underwriters at Lloyd's, London."

2. Pallante was originally represented. However, on June 2, 2017, October 24, 2017, and November 28, 2017, her successive lawyers filed motions to withdraw. The court granted these motions on June 13, 2017, November 21, 2017, and January 3, 2018, respectively. (Doc. ## 13, 30, & 35).

counterclaim under Rule 56 of the Federal Rules of Civil Procedure. Pallante, who is now proceeding pro se, has not filed a response.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See id. at 252. We view the facts and draw all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id.

In addition, Rule 56(e)(2) provides "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## II

The following facts are not in dispute. Pallante owned a two-family dwelling at 243 Eighth Street South, Brigantine, New Jersey. Pallante often used the first floor as her own living space and made the second floor available for rent, particularly during the summer. Lloyd's issued to her a primary homeowners insurance policy # WMPH00826 for the Brigantine property. The policy was issued in New Jersey and was in effect from June 8, 2015 to June 8, 2016. It provided for $375,000 in dwelling coverage and $187,500 in personal property coverage.

Pallante also owned a home at 833 South Third Street in Philadelphia, Pennsylvania. When she was not living in the Brigantine house, she stayed at her place in Philadelphia. She stored clothing and other items at both of her residences. Pallante often traveled between the two locations and took items with her from one house to another.

On March 5, 2016, the Brigantine Fire Department notified Pallante that there had been a fire at her Brigantine

property.  At the time of the fire, she was in Philadelphia.
Damage to the house included broken windows as well as burned
and damaged property on the interior of the first floor of the
house, particularly in the kitchen and bedrooms.  At some point
after the fire, Pallante gave permission to Mike Lange of the
Brigantine Fire Department to enter the home to inspect it.

On March 7, 2016, Pallante advised Lloyd's of her
claim for fire loss.  Thereafter Lloyd's retained CJW Associates
to administer the fire loss claim.  CJW Associates in turn
retained Vanguard Adjusters Group, Inc. ("Vanguard") to assist
it.

Due to illness and car troubles, Pallante was unable
to visit the Brigantine home until March 10, 2016.  An adjuster
from Vanguard, Adam Foster, accompanied her to the home on that
date.  During this visit, Pallante noted to Foster that the
house had only been partially boarded up and that there were
items missing from it.  She told Foster that she believed theft
had occurred sometime between March 5 and March 10, 2016.
Subsequently, Vanguard adjuster Robert Fleckenstein took over
responsibility from Foster.

Lloyd's issued advance payments to Pallante on
April 21, 2016 in the amounts of $25,000 for dwelling coverage
and $10,000 for personal property coverage.  She cashed these
checks.

-4-

Vanguard thereafter concluded that the Brigantine premises was a total loss.  In its June 6, 2016 adjustment, it determined that the replacement cost value of the premises was $415,995.20 and the actual cash value of the loss was $354,267.16.[3]  It calculated that the remaining amount due in dwelling coverage under the insurance policy was $326,767.16.[4]  Lloyd's issued her a check in this amount on July 14, which she cashed.

Meanwhile, on July 2, 2016 Pallante had submitted to Fleckenstein the written Statement as well as the written Property Loss Report that she had given to the Brigantine Police Department on May 2, 2016.  The Statement provided, in relevant part:

> On March 10th Fireman Fugoli met me [at the Brigantine home and] we both found the back 2 sliding glass doors ajar.  I was not able to file a report until today because I had no transportation to Brigantine.  My insurance [company] was notified of the theft at that time.

The Property Loss Report she filed with the Police Department described eleven personal items that she identified as stolen from her Brigantine home.  According to Pallante, they had a

---

3.  Vanguard calculated the actual cash value of the loss by subtracting the amount of depreciation, $61,728.04, from the replacement cost value of $415,955.20.

4.  This amount was determined by subtracting a $2,500 deductible, the $61,728.04 depreciation, and the $25,000 prior advance from the replacement cost value of $415,995.20.

value of over $58,590: (1) titanium bike, $3,000; (2) Louis Vuitton shoulder carrier, $3,200; (3) Louis Vuitton shoulder bag, $3,500; (4) Louis Vuitton suit bag, $2,800; (5) Louis Vuitton pet carrier, $3,800; (6) Louis Vuitton large duffle bag, $3,000; (7) Louis Vuitton purse, $2,200; (8) Movado watch, $2,000; (9) fire box safe, $90; (10) passport, citizenship papers, and jewelry, over $25,000; and (11) expensive clothing, over $10,000.

On August 10 and 11, 2016, Pallante sent multiple emails to account manager Neysa Hatcher from CJW Associates, the claim administrator hired by Lloyd's, with photographs of her lost personal property. The subject line of both of the emails was "Pallante claim."[5] On September 13, 2016 at the request of Lloyd's, defense counsel Wright & O'Donnell, P.C. conducted an Examination Under Oath ("EUO") of Pallante in Conshohocken, Pennsylvania pursuant to the terms of insurance policy. During the EUO, Pallante testified that prior to the fire the seven pieces of Louis Vuitton luggage referenced above were present in the Brigantine home at the time of the fire. When she arrived

---

5. In its brief in support of its motion for summary judgment, Lloyd's states: "On August 10, 2016 and August 11, 2016, the Plaintiff submitted numerous email correspondences to [Lloyd's]'s third-party administrator, CJW Associates' Account Manager, Neysa Hatcher, Ph.D., attaching photographs in support of her fire and theft claims." However, the emails from Pallante to Hatcher do not contain any text other than the subject lines of "Pallante claim." They do not identify whether the photographs support the fire or the theft claim, or both.

at Brigantine home on March 10, 2016, only one of them was found. She stated that she had not replaced any of the items after the March 10 visit.

When questioned about the photographs she submitted to Hatcher from CJW Associates, Pallante stated that over the course of the three to five years prior to the fire either she or her roommate had taken all of the photographs. She added that most of those she submitted to Lloyd's were not originals, but rather were photographs of photographs or photographs of a computer or phone screen. She could not remember whether the remaining photographs were originals, were also photographs of photographs, were photographs of an iPhone screen, or were sent to her by her roommate. In addition, Pallante was unable to recall which of these had been taken using an iPhone and which had been taken using an iPad. She had deleted some of them but could not remember which ones. She stated that an ex-boyfriend had paid for the missing items and she did not have proof of payment. She explained that she could not recall which items in the photographs were lost in the theft and which were lost in the fire.[6]

During the EUO, Pallante noted that she often traveled between her homes in Philadelphia and Brigantine. She sometimes

---

6. Notably, some of the items pictured in the photographs were the same items that were described in the Brigantine Police Department documentation of the theft.

stored her belongings in one house and sometimes in the other. She often traveled between the locations and brought items with her.

On November 30, 2016 at the request of Lloyd's, forensic video and image analyst George Reis of Imaging Forensics, Inc. prepared a Photographic Analysis Report of seven photographs Pallante had provided to Lloyd's. Reis analyzed the photographs to "determine when they were taken and if it is possible that they are photographs or scans of existing photographic prints."

He made the following findings: (1) all of the photographs were taken with an iPad; (2) all of the photographs were taken between August 10, 2016 at 12:45 p.m. and August 11, 2016 at 9:28 a.m.; (3) six of the seven photographs were taken at latitude 29,54.218N and longitude 75,8.919W, which translates approximately to the intersection of Third and Queen Streets in Philadelphia[7]; (4) the photographs were not processed with any post-photograph altering application; (5) six of the seven photographs did not contain any "artifacts that would indicate that an image is a photograph of an existing printed photograph . . . [or] that would indicate that an imagine is a photograph of a computer screen[]"; and (6) the seventh photograph had dust

_____

7. The place where the photographs were taken, at or near the intersection of Third and Queen Streets, is at or near her home in Philadelphia at 833 South Third Street.

spots, which was "consistent with dust spots on the surface of the objects being photograph."  Reis concluded:

> [I]t is highly likely that the seven images I analyzed were taken by an iPad on August 10 and 11 of 2016, at the above location.  Based on an analysis of the image content, and the lack of artifacts, except explainable dust spots on one image, it is highly likely that the images are original photographs, and not photographs of photographic prints or a computer screen.

In other words, the photographs, according to Reis, were all taken <u>after</u> the fire and <u>after</u> the alleged theft, which occurred or purportedly occurred in March 2016.

The Lloyd's homeowners insurance policy contained a provision addressing "concealment or fraud."  It stated that coverage was not provided "if, whether before or after a loss, an 'insured' has:  1. intentionally concealed or misrepresented any material fact or circumstance; 2. engaged in fraudulent conduct; or 3. made false statements relating to this insurance."

On January 20, 2017, Lloyd's sent Pallante a letter notifying her that it was denying her coverage for her personal property claims based on its conclusion that she "intentionally concealed and/or misrepresented material facts concerning [her] claim for personal property, and made false statements regarding the items that were allegedly lost due to the fire or theft."

The following month, on February 14, 2017, Pallante filed this action against Lloyd's in the Court of Common Pleas of Philadelphia County. As noted above, she brought a claim for breach of contract on the ground that Lloyd's failed to provide her the full coverage due under the insurance policy.[8] She also alleged pursuant to 42 Pa. Const. Stat. § 8371 that Lloyd's acted in bad faith by denying her that coverage. Lloyd's timely removed the action to this court and then filed its counterclaim.

On October 10, 2017, Lloyd's served Pallante with its "First Set of Interrogatories and First Request for Production of Documents and Tangible Things" and noticed her deposition for November 16, 2017. The interrogatories sought detailed information from Pallante concerning: her damages; relevant provision(s) of the homeowners insurance policy; all of the items that were damaged in the fire or lost in the theft; details of the photographs submitted to CJW Associates including when and where they were taken, and by whom; and the basis for the bad faith claim.[9] Pallante, who had notice on October 24 and November 28, 2017 of her counsel's intent to withdraw from representing her, failed to respond to the discovery and as a

---

8. The complaint contains no further detail.

9. These interrogatories were Interrogatory Numbers 5, 8, 9, 17, and 22.

result Lloyd's did not proceed with her deposition. As of January 3, 2018, Pallante was representing herself. On January 18, 2018, Lloyd's filed a motion to compel Pallante to respond to its discovery request. The court granted this motion the following day and ordered Pallante to comply within fourteen days.

On February 6, 2018, Lloyd's filed a motion for sanctions for Pallante's failure to comply with the court's order compelling her to respond to the discovery request. On February 22, 2018, the court imposed sanctions on Pallante in the amount of $500 for her failure to comply with the order and ordered her to respond to the discovery request on or before March 10, 2018. The order warned that if she failed to comply with the order her complaint could be dismissed for lack of prosecution.[10]

On April 30, 2018, after several warnings to Pallante and her defiance of court orders, the court granted the unopposed motion of Lloyd's to dismiss Pallante's complaint for lack of prosecution. The court explained its reasoning in Pallante v. Those Certain Underwriters at Lloyd's London, Doc. # 50, (Apr. 30, 2018).

---

10. Pallante failed to appear at two scheduled status conferences. The court had also warned Pallante that her complaint could be dismissed for lack of prosecution if she failed to appear at those conferences. See Doc. ## 34 & 40.

III

We turn first to the counterclaim of Lloyd's for common law fraud under Pennsylvania law.[11] Lloyd's contends that Pallante intentionally and fraudulently misrepresented facts in support of her claims for fire and theft loss. It is uncontested that Pallante's EUO took place in Pennsylvania and that she submitted to Lloyd's photographs and emails concerning her personal property from her Philadelphia home.

Under Pennsylvania law, the elements of common law fraud are: "(1) a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge as to its falsity or recklessness as to whether it is false or true; (4) with the intent of misleading another; (5) justifiable reliance on the misrepresentation; and (6) injury that was proximately caused by the reliance." Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999); see also Restatement (Second) of Torts § 9. "[T]he deliberate nondisclosure of a material fact amounts to a culpable misrepresentation no less than does an intentional

---

11. Some of the events in question occurred in New Jersey and some in Pennsylvania. No one has disputed the applicability of Pennsylvania law to the fraud and rescission counts. Where the parties fail to raise the applicability of foreign law, "the court will ordinarily apply the forum's law." Bel—Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 440-42 (3d Cir. 1999) (citing Restatement (Second) Conflict of Laws § 136 cmts. f, h (1971)).

affirmation of a material falsity." <u>Neuman v. Corn Exch. Nat'l</u>
<u>Bank & Trust Co.</u>, 51 A.2d 759, 764 (Pa. 1947).

The undisputed record shows that on March 7, 2016,
Pallante submitted a claim for fire loss.  On March 10, 2016,
Pallante visited the Brigantine home, inspected it, and reported
to the Vanguard adjuster that there were missing and damaged
items.  That same day Pallante first raised the claim of a theft
loss with the Vanguard adjuster.  On April 21, 2016, Lloyd's
issued to Pallante an advance payment of $10,000 in personal
property coverage and an advance payment of $35,000 in dwelling
coverage.

On July 2, 2016, Pallante submitted to the Vanguard
adjuster the written Statement that she had made to the
Brigantine Police Department in May as well as the Brigantine
Police Department Property Loss Report that she completed at
that time.  These documents detailed the eleven items of
personal property that she claimed were stolen in the theft.
She declared they had a total value of over $58,590.

Significantly, on August 10 and 11, 2016, Pallante
e-mailed multiple photographs to the claim administrator,
CJW Associates, in order to support her claim for personal
property loss.  Some of these photographs were of items that
Pallante had described in the Brigantine Police Department
documentation.  However during her EUO, Pallante could not

-13-

recall whether the items in the photographs were lost during the fire or the theft.  Pallante said she took these photographs herself or received them from a friend who took them in her presence.

Pallante represented in the EUO on September 13, 2016 that she had taken the photographs prior to the fire on March 5, 2016 and alleged March 2016 theft and also that some of them may have been photographs of photographs or photographs of a computer or phone screen.  Concerned about Pallante's veracity, Lloyd's had the photographs analyzed by an expert.  The subsequent Photographic Analysis Report of George Reis determined that the photographs were taken, <u>not</u> <u>before</u> the fire and alleged theft, but between August 10 and August 11, 2016, <u>after</u> the fire and alleged theft.  They were actual photographs of the items depicted, rather than photographs of existing photographs or phone or computer screens.

Pallante has not filed a response to the motion of Lloyd's for summary judgment.  She has not pointed to any disputes of material fact which are genuine.  While she has a copy of the Photographic Analysis Report, Pallante has not properly addressed, let alone addressed at all, its conclusions. In light of her failure to address the Report and her failure to provide Lloyd's with relevant discovery concerning the photographs as ordered by this court, no reasonable juror could

find other than that the photographs were taken on August 10 and 11, 2016.  Under these circumstances, we consider these facts undisputed.  See Fed. R. Civ. P. 56(e)(2).  It follows, as the night follows the day, that Pallante has suffered no personal property loss for the items photographed since she still had possession of those undamaged items after the fire and alleged theft.

The record is clear that Lloyd's made payments to the Pallante in reliance on what it believed at the time to be her truthful representations about her losses as a result of the fire and alleged theft.  Lloyd's paid to Pallante $351,767.17 in dwelling coverage and $10,000 in personal property coverage.  As it turned out, there is no genuine dispute about the fact that Pallante made materially false representations to Lloyd's in an effort to mislead it into paying her for personal property which she did not lose.  Neuman, 51 A.2d at 764.  Under the terms of the insurance policy, no coverage is provided if the insured either before or after the loss intentionally concealed or misrepresented any material fact, engaged in fraudulent conduct, or made a false statement relating to their insurance.  Clearly, Pallante breached these provisions of the policy.

Accordingly, we will enter summary judgment in favor of Lloyd's and against Pallante on the counterclaim of common law fraud for $361,767.16, the amount Lloyd's paid to her.

-15-

We next address Lloyd's counterclaim for rescission. Lloyd's again relies on Pennsylvania law. Lloyd's contends that it is entitled to rescission of the homeowners insurance policy it issued to Pallante in New Jersey based on her intentional and fraudulent representations in connection with her theft loss claim.

Preliminarily, we note that rescission is an equitable remedy rather than an individual cause of action. Nascone v. Spudnuts, Inc., 735 F.2d 763, 770 (3d Cir. 1984); Lackner v. Glosser, 892 A.2d 21, 31 n. 7 (Pa. Super. Ct. 2006). Rescission is a "party's unilateral unmaking of a contract for a legally sufficient reason, such as the other party's material breach, or a judgment rescinding the contract." Black's Law Dictionary (10th ed. 2014). Pennsylvania recognizes the "long-standing right" of rescission of a contract ab initio. Jung v. Nationwide Mutual Fire Ins., 949 F. Supp. 353, 359 (E.D. Pa. 1997); Metro. Prop. and Liab. Ins. v. Ins. Com'r, 580 A.2d 300, 303 (Pa. 1990).

Under Pennsylvania law, the court may grant the equitable remedy of rescission of an insurance policy "for due cause." Overmiller v. Town and Village Ins. Serv., 21 A.2d 411, 412 (Pa. Super. Ct. 1941). "A universal example of 'due cause' is fraud." Id. New Jersey law on the equitable remedy of

rescission is similar to that of Pennsylvania.  See e.g., First
American Title Ins. v. Lawson, 827 A.2d 230 (N.J. 2003).

As we have set forth above, there is no genuine
dispute of material fact concerning Pallante's fraudulent
misrepresentations in connection with her claim for theft loss
for personal property.  For the reasons we have stated, no
reasonable juror could find other than that the crucial
photographs in issue were taken on August 10 and 11, 2016 after
the fire and alleged theft.  Furthermore, since she has not
addressed the Report analyzing the photographs, the dates it
attributes to those photographs are now considered undisputed.
See Fed. R. Civ. P. 56(e)(2).  Pallante's false and fraudulent
misrepresentations and continued concealment directly contravene
the "concealment or fraud" provision of her homeowners insurance
policy that we described above.

The homeowners insurance policy issued to Pallante by
Lloyd's is rescinded ab initio on the ground that Pallante
breached the insurance policy by engaging in fraud.

V

We turn to Lloyd's counterclaim for fraud under the
New Jersey Fraud Prevention Act, N.J.S.A. §§ 17:33A, et seq.
The statute provides, in relevant part, that a person violates
the Act if he or she:

> (1) Presents or causes to be presented any
> written or oral statement as part of,
> or in support of or opposition to, a
> claim for payment or other benefit
> pursuant to an insurance policy . . .
> knowing that the statement contains any
> false or misleading information
> concerning any fact or thing material
> to the claim; or
>
> . . .
>
> (3) Conceals or knowingly fails to disclose
> the occurrence of an event which
> affects any person's initial or
> continued right or entitlement to
> (a) any insurance benefit or payment or
> (b) the amount of any benefit or
> payment to which the person is
> entitled[.]

N.J.S.A. § 17:33A-4a.(1, 3). "Any insurance company damaged as

the result of a violation of any provision of this act may sue

therefore in any court or competent jurisdiction to recover

compensatory damages, which shall include reasonably

investigation expenses, costs of suit and attorneys' fees."

N.J.S.A. § 17:33A-7a.

Lloyd's issued the policy to Pallante in New Jersey

for coverage of property located in New Jersey. Pallante

presented to Vanguard written statements in support of her

claims for benefits under the homeowners insurance policy for

her home in New Jersey. On July 2, 2016, she submitted to

Lloyd's a list of items that allegedly had been stolen. On

August 10 and 11, 2016, she submitted corresponding photographs

of her loss.  The Photographic Analysis Report establishes that

the submissions of Pallante as to her personal property loss

were false, since the analysis concluded that the photographs

were taken after the date of the fire and purported theft.  She

has not addressed the findings of the Report and has failed to

produce relevant discovery.  Again, as previously explained, the

August 2016 dates are deemed undisputed.  <u>See</u> Fed. R. Civ. P.

56(e)(2).  No reasonable juror could find in her favor on this

record.

Thus we will grant the motion of Lloyd's for summary

judgment in its favor and against Pallante on its counterclaim

for fraud pursuant to N.J.S.A. § 17:33A-4.

VI

We turn to the claim of Lloyd's for declaratory

judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201,

et seq., that it owes no contractual obligation to Pallante

under the homeowners insurance policy on the ground that she

committed fraud.

The Declaratory Judgment Act provides, in relevant

part:

> In a case of actual controversy within its
> jurisdiction . . . any Court of the United
> States, upon the filing of an appropriate
> pleading, may declare the rights and other
> legal relations of any interested party
> seeking such declaration, whether or not
> further relief is or could be sought.

28 U.S.C. § 2201(a).  Our exercise of jurisdiction under the Act is discretionary and "yields to considerations of practicality and wise judicial administration."  Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995); Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 646-47 (3d Cir. 1990).

Declaratory judgment is not an appropriate remedy at this juncture.  An insurance carrier may bring an action for declaratory relief to settle issues of validity of an insurance policy, whether coverage exists and if so the extent of it, and whether an insurer owes a duty to defend or indemnify an insured.  12 James Wm. Moore, et al., Moore's Federal Practice § 57.82[1] (3d. 2018). "The purpose of the Declaratory Judgment Act is to enable parties to adjudicate their disputes before either suffers great damage."  Id. at § 57.03[2].

Our Court of Appeals, however, has explained that "[d]eclaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."  Andela v. Admin. Office of the United States Courts, 569 F. App'x 80, 83 (3d Cir. 2014) (citing Terra Nova Ins. v. 900 Bar, Inc., 887 F.2d 1213, 1224 (3d Cir. 1989)). They are not "meant simply to proclaim that one party is liable to another."  Corliss v. O'Brien, 200 F. App'x 80, 84 (3d Cir. 2006).

Lloyd's urges the court to declare that Pallante has committed fraud and thus Lloyd's has no obligation to her under the insurance policy. However, we have already concluded that Pallante committed fraud and that Lloyd's is entitled not only to damages but also to rescission of the policy. Id. A declaration would be a moot point.

Accordingly, we will deny as a matter of law the motion of Lloyd's for summary judgment with respect to its claim under the Declaratory Judgment Act and will dismiss this claim.

VII

Finally, we turn to the issue of prejudgment interest. "Federal courts sitting in diversity must apply state law with respect to prejudgment interest." Gleason v. Norwest Mortg., Inc., 253 F. App'x 198, 203 (3d Cir. 2007) (citing Jarvis v. Johnson, 668 F.2d 740, 746 (3d Cir. 1982)). Lloyd's has not identified which state law it deems to be applicable. We will apply the law of Pennsylvania, the forum state. See Bel—Ray, 181 F.3d at 440-42.

Pennsylvania has adopted § 337 of the Restatement of Contracts with respect to the award of prejudgment interest. Penneys v. Pennsylvania R. R. Co., 183 A.2d 544 (Pa. 1962). It provides, in relevant part:

> If the parties have not by contract
> determined otherwise, simple interest at the
> statutory legal rate is recoverable as

> damages for breach of contract . . . where
> the defendant commits a breach of contract
> . . . to render a performance the value of
> which in money is . . . ascertainable by
> mathematical calculation from a standard
> fixed in the contract[.]

Restatement (Second) of Contracts § 337(a).  The statutory rate in Pennsylvania is 6% simple interest.  41 Pa. Stat. and Cons. Stat. Ann. § 202.

We calculate prejudgment interest on the amount of $35,000 from April 21, 2016, the date of payment by Lloyd's to Pallante up to today's date.  This amounts to $4,901.92.  We calculate the prejudgment interest in the same manner on the $326,767.16 paid by Lloyd's to Pallante on July 14, 2016.  This amounts to $41,253.23.  Thus the total amount of prejudgment interest is $45,345.15.

VIII

In conclusion, the court will enter summary judgment in favor of Lloyd's and against Pallante in the amount of $361,767.16, plus pre-judgment interest in the amount of $45,345.15, for a total of $407,112.31.  We will also rescind ab initio the homeowners policy # WMPH00826 that Lloyd's issued to Pallante.  We will deny the motion of Lloyd's for summary judgment as a matter of law with respect to its claim for declaratory judgment and that claim will be dismissed.