IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSSA PALLANTE | : | CIVIL ACTION |
| v. | : | |
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S LONDON | : | NO. 17-1142 |

MEMORANDUM

Bartle, J.                                                            April 18, 2019

Defendant and counterclaim plaintiff, Those Certain Underwriters at Lloyd's London ("Lloyd's") holds a judgment in the amount of $407,112.31 against plaintiff and counterclaim defendant Rossa Pallante ("Pallante") in this civil action involving insurance fraud. The court has also entered an order in Lloyd's favor for $67,881.35 in counsel fees and costs.[1] Lloyd's subsequently served on Pallante interrogatories and requests for production of documents in aid of execution on the judgment and order. It has now filed a motion to compel and for

---

1. Pallante sued Lloyd's, her insurer, to recover for the loss of her home and its contents in Brigantine, New Jersey, as a result of a fire. Lloyd's counterclaimed to recover what it had already paid Pallante on the ground that she had committed fraud in making a claim for the loss of certain personal property. The court thereafter dismissed her complaint for failure to provide discovery. Ultimately the court entered judgment in favor of Lloyd's and against Pallante on Lloyd's counterclaim and later granted Lloyd's an award of counsel fees and costs. Pallante appealed the judgment, but the Court of Appeals dismissed the appeal on November 16, 2018 for failure to file a brief and appendix.

sanctions against Pallante for failure to provide all the sought-after discovery.[2] Pallante has countered by invoking her Fifth Amendment right against self-incrimination.

On February 12, 2019, the court had entered an order granting Lloyd's motion to compel after Pallante, representing herself, had failed to respond.[3] Shortly thereafter, Pallante, now represented by her third counsel, served answers to some interrogatories and produced a few documents. However, she has refused to answer other interrogatories and to produce most documents. Lloyd's followed with a motion for sanctions for her failure to comply fully with this court's February 12, 2019 order. In response, as noted above, Pallante has raised her right against self-incrimination under the Fifth Amendment as the basis for her refusal to provide the remaining discovery. We must decide whether her invocation of the privilege has merit. In support of her refusal, the court has permitted her

---

2. Defendant requests that the court sanction Pallante in the amount of $250 per day until she provides full and complete responses to its interrogatories and produces all relevant documents in response to its requests for production. In the alternative, defendant requests that if Pallante fails to provide full and complete responses within ten days of this court's order to compel, the court issue a bench warrant for the arrest of Pallante. Defendant also asks the court to require Pallante to reimburse defendant the $2,000 in costs incurred to prepare the instant motion and prior motion to compel.

3. At earlier points in this lawsuit, Pallante was represented by three different lawyers from two law firms. The court granted the motion of each to withdraw as her counsel.

counsel to file ex parte and under seal a memorandum in support of her Fifth Amendment privilege.

The Fifth Amendment to the Constitution provides in relevant part that "no person . . . shall be compelled in any criminal case to be a witness against himself."  This guarantee applies not only in criminal but also in civil and administrative proceedings.  <u>United States v. Lee</u>, 315 F.3d 206, 211 (3d Cir. 2003).  The Supreme Court has explained, "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime."  <u>Hoffman v. United States</u>, 341 U.S. 479, 486 (1951).  The burden is on the claimant to show that there is a "reasonable possibility" that her statement would incriminate her.  The burden is lower than that of a preponderance of the evidence.  <u>Estate of Fisher v. Comm'r of the IRS</u>, 905 F.2d 645, 650 (2d. Cir. 1990).  The guarantee against testimonial compulsion "must be accorded liberal construction in favor of the right it was intended to secure."  <u>Hoffman</u>, 341 U.S. at 486.  Nonetheless, the danger of self-incrimination must be "substantial and real" and "not merely trifling or imaginary."  <u>United States v. Doe</u>, 465 U.S. 605, 614 n.13 (1984) (quoting <u>Marchetti v. United States</u>, 390 U.S. 39, 53 (1968)).

It is for the court to determine whether the claimant is justified in asserting the privilege. In making that determination, the court may rely not only on the facts in evidence but also on its "personal perception of the peculiarities of the case." Hoffman, 341 U.S. at 486-87. The focus must always be on the issue of self-incrimination. Whether the claimant will actually be prosecuted is not a relevant consideration. United States v. Edgerton, 734 F.2d 913, 921 (2d Cir. 1984); S.E.C. v. Leach, 156 F. Supp. 2d 491, 494 (E.D. Pa. 2001).

The Fifth Amendment, which provides that no person "shall be compelled in any criminal case to be a witness against himself," only protects against compelled "testimonial" communications. It does not protect the content of documents in a person's possession that may be incriminating. The Supreme Court has concluded that "there is a significant difference between the use of compulsions to extort communications from a defendant and compelling a person to engage in conduct that may be incriminating." United States v. Hubbell, 530 U.S. 27, 34-35 (2000). The documents which must be produced are not only those voluntarily created but also those that may be "the byproduct of obedience of a regulatory requirement, such as filing an income tax return [or] maintaining required records . . . ." Id. at 35.

In addition, the Fifth Amendment does not protect a person from producing documents in her possession that were created by third parties. Such documents may include, for example, accountant's work papers, bank statements, and W-2 reports of income. Fisher v. United States, 425 U.S. 391, 409 (1976); United States v. Carlin, 2006 WL 2619800, at *3 (E.D. Pa. Sept. 11, 2006) (citing United States v. Burgess, 1999 WL 46625 (E.D.Pa.1999)).

The act of producing documents, however, may still be protected by the Fifth Amendment if the act under the particular circumstances communicates otherwise unknown information about the documents' existence, possession, or authenticity. Hubbell, 530 U.S. at 36-37; Fisher, 425 U.S. at 411-12. If so, the act of production has a "compelled testimonial aspect." Hubbell, 530 U.S. at 36. On the other hand, if the existence, possession, and authenticity of the documents are a "foregone conclusion and the [party] adds little or nothing" by producing the documents, then compelled production would not violate the Fifth Amendment. Fisher, 425 U.S. at 411; United States v. Apple MacPro Computer, 851 F.3d 238, 247 (3d Cir. 2017), cert. denied sub nom. Doe v. United States, 138 S. Ct. 1988 (2018).

The court may allow ex parte filings by the claimant in support of her position, as we have done here. Estate of Fisher, 905 F.2d at 650. Otherwise the cat may be out of the

-5-

bag with respect to the privileged information.  This procedure is similar to that used in the more common situation where the court reviews in camera both the documents which a party claims to be subject to the attorney-client privilege and that party's accompanying brief.  Id.

We must review individually each interrogatory for which Pallante has invoked her Fifth Amendment privilege to determine if responding would "furnish a link in the chain of evidence needed to prosecute" Pallante.  Hoffman, 341 U.S. at 486.  In doing so, we may consider her ex parte memorandum dated March 12, 2019.

Interrogatory No. 6 requests that Pallante "State [her] gross taxable income as shown by [her] Federal Income Tax returns for the years 2013 through 2017."  Based on her ex parte memorandum, Pallante has met her burden of demonstrating a substantial and real danger of self-incrimination and may not be compelled to answer.

Interrogatory No. 7 asks "What is your present average monthly income from all sources?"  For the same reason, the Fifth Amendment also shields Pallante from answering this question.

Interrogatory No. 8 has several sub-parts seeking information about the home in which Pallante now lives that she did not answer.  Sub-part (b) asks, "When was the property

purchased, what was the purchase price, by whom it was paid and what was the source of the funds used?" Pallante must answer each of these questions other than identifying the source of the funds. Divulging this basic information about a real estate transaction, which is a matter of public record, could not create a "reasonable possibility" of prosecution for any crime.

Interrogatory No. 9 includes sub-parts about Pallante's interests in real estate other than the home in which she lives. She has identified a Wesley Chapel, Florida property but declined to disclose "the amount and source of funds which [she] paid to acquire such interest," as called for in Interrogatory No. 9(f) and "the identity of the documents which relate to [her] interest in the real estate, and the source of funds used to purchase the interest (including statements, passbooks, check registers, etc.)" as called for in Interrogatory No. 9(g). Pallante's privilege against self-incrimination protects her from being compelled to provide the source of the funds and the identity of the documents which relate to her interest in such real estate. However, she must provide the purchase price. As in Interrogatory No. 8, identifying this information, which is a matter of public record, does not create a "reasonable possibility" of prosecution.

Interrogatory No. 10 asks several questions about any real estate conveyances or transfers that Pallante has made in the last five years. She has answered that she has transferred real estate and identified the properties and to whom they were transferred but invoked her privilege regarding "the consideration which [she] received" for the transfer, as called for in Interrogatory No. 10(d), "the reason for the conveyance of transfer," as called for in Interrogatory No. 10(e), and "the fair market value of [her] interest in the property at the time of its conveyance or transfer" as called for in Interrogatory No. 10(f). Pallante must respond to these sub-parts in Interrogatory No. 10 because she has not met her burden of demonstrating to the court that there is a reasonable possibility that any of these statements would incriminate her.

Interrogatory No. 12 asks several questions about Pallante's interest in any motor vehicle. She has identified two vehicles but invoked her Fifth Amendment privilege with respect to sub-parts (d) and (g) which seek respectively their purchase prices and market values. Pallante must also answer these sub-parts because she has not demonstrated to the court that divulging these values would create a reasonable possibility of prosecution for any crime.

Interrogatory No. 13 requests Pallante to:

> Identify all items of tangible personal property having a value of $100 or more . . . including but not limited to, jewelry, furs, furniture, office equipment, television sets, radios, record players, electrical appliances, power tools, photographic equipment, works of art, musical instruments, coin or stamp collections, silver or china; and for each item state the purchase price and date of purchase; the approximate value of each item; the seller of each item; by whom each item was purchased; the source of funds used to purchase each item; the nature and extent of [her] interest in each item; the name, address, and telephone number of any joint owner; the location of each item; the amount due on any outstanding purchase money security interest; conditional sales agreement, lease/sale agreement, or other encumbrance; the name and address of the secured party, conditional seller or lessor; and all documents relating to the purchase and ownership of each item.

Pallante merely declined to answer on Fifth Amendment grounds "as to personal property subject to all applicable federal and state exemptions from execution process" and otherwise provided no answer. She does not identify which property fits into this category. In any invent, any assertion that her personal property is exempt from execution is not a valid basis to refuse to answer interrogatories. As this court has stated, "While it may ultimately be the case that these assets are not subject to execution, that does not mean that information about them is protected from discovery." ITOCHU Int'l, Inc. v. Devon Robotics, LLC, 303 F.R.D. 229, 233 (E.D. Pa. 2014). Pallante also may not avoid answering this interrogatory by relying on

-9-

the Fifth Amendment. Her ex parte memorandum does not demonstrate that revealing any of this information would create a "reasonable possibility" of prosecution.

Interrogatory No. 14 contains several sub-parts related to any interest Pallante may have in corporate stocks, bonds, or other investment contracts. It asks:

> Do you own or have any interest in any corporate stocks, bonds, or other investment contracts, including any option to purchase or sell a security, either individually or jointly with another individual or entity or in the name of any entity in which you have any ownership interest or other involvement? If so, as to such interest state:
>
>> (a) The identity of such stock, bond or security;
>> (b) The name in which the stock, bond or security is held;
>> (c) The par or face value of such stock, bond or security;
>> (d) The market value of such stock, bond or security;
>> (e) The name, address and telephone number of the custodian or such stock, bond or security;
>> (f) By whom such stock, bond or security was purchased and the source of funds used to purchase such stock, bond or security;
>> (g) The name, address and telephone number of any joint owner;
>> (h) The date(s) on which interest is payable on any bonds;
>> (i) The maturity date of any bond; and
>> (j) The identity of any documents which relate to the purchase and ownership of such stock, bond or security including the actual stock, bond and securities certificates.

Pallante asserted her privilege as to all of the sub-parts and did not answer whether or not she had such interests. Based on her ex parte memorandum, the Fifth Amendment protects Pallante from being compelled to answer these questions.

> Interrogatory No. 16 asks whether Pallante:
>
> own[s] or maintain[s] any savings or checking accounts, certificates of deposit, money market accounts, mutual fund accounts, or IRA or Keogh accounts, either individually or jointly with another individual or entity or in the name of any entity in which [she has] any ownership interests or other involvement.

Pallante has revealed information about the title of her accounts, the identity of the institutions holding those accounts, and the identity of any joint owners. She has refused, however, to answer certain sub-parts: Interrogatory No. 16(f) which asks "The dates and amounts of [her] deposits or contributions for the last five years"; Interrogatory No. 16(g) which seeks "The dates and amounts of [her] withdrawals for the last five years"; and Interrogatory No. 16(h) which asks "The current balance of the account or value of the certificate." As with Interrogatory No. 14, Pallante's privilege against self-incrimination shields her from being compelled to respond to those three sub-questions.

> Interrogatory No. 20 seeks to learn whether Pallante has "an interest in any other assets not already disclosed." Pallante cannot be compelled to respond because she has

demonstrated that identifying such an interest would create a "reasonable possibility" that her answers would violate her Fifth Amendment privilege.

Interrogatory No. 21 has several sub-parts related to whether Pallante has sold, traded, or given away any tangible or intangible personal property with a value of $100 or more to anyone within the last five years.  If so, it asks for Pallante to provide:

> (a) The description of the property;
> (b) The interest which [she] transferred;
> (c) The identity of the person to whom [she] transferred the property or interest therein;
> (d) The date of the transfer;
> (e) The consideration you received for each transfer;
> (f) The reason for such transfer;
> (g) The fair market value of the interest at the time or [sic] [her] transfer.

Pallante has cited her Fifth Amendment privilege as to the entire interrogatory.  She must answer to the extent that she has sold, traded, or given away any real estate but otherwise may not be compelled to respond on the ground that the Fifth Amendment protects her from doing so.

Interrogatory No. 22 inquires whether Pallante owes any "federal, state, or local taxes," and, if so, the identity of "each taxing authority, the period for which taxes are due, and the amount of taxes due."  Again, based on her ex parte

memorandum, the Fifth Amendment protects Pallante from having to answer.

In sum, her Fifth Amendment privilege against self-incrimination safeguards Pallante from being compelled to answer Interrogatories Nos. 6, 7, 14, 16(f), 16(g), 16(h), 20, and 22. It also protects Pallante from having to answer sub-parts (f) and (g) of Interrogatory No. 9 to the extent it asks Pallante to provide the source of the funds and the identity of documents, and Integratory No. 21 to the extent it seeks information about anything other than sales of real estate. In her ex parte memorandum, Pallante advised the court of "substantial and real" dangers of self-incrimination that could result from providing answers to these interrogatories. Pallante does not have to respond to these questions because doing so may furnish the link in the chain of evidence needed to prosecute her for one or more crimes that she identified in her memorandum. See Hoffman, 341 U.S. at 486.

Pallante must answer the remaining interrogatories for which she invoked the Fifth Amendment because she has not met her burden of demonstrating that there is a "reasonable probability" that any of the responses would incriminate her.

We next turn to the requests for production which Lloyd's has served on Pallante in aid of execution as a judgment creditor. According to the statement of Lloyd's counsel made at

-13-

a court hearing, Pallante has provided some real estate documents, some bank records, and some documents related to a brokerage account. We have attached the requests for production as an appendix at the end of this memorandum. We have reviewed each of the 26 requests for production, which seek a variety of documents related to Pallante's assets. The majority of these documents, if they exist, appear to have been created by third parties, such as real estate documents and bank statements. Other documents, if they exist, may have been created by Pallante, such as personal logs and self-prepared tax records.

The Fifth Amendment, as noted above, normally does not shield a person from having to produce incriminating documents, whether the documents were created by a third party, voluntarily created by the claimant, or prepared or maintained as a result of some regulatory requirement. See Hubbell, 530 U.S. at 35; Fisher, 425 U.S. at 409; Doe, 465 U.S. at 614; Carlin, 2006 WL 2619800, at *3. Nonetheless, as noted above, the act of production may constitute compelled testimony protected by the Fifth Amendment if the act discloses unknown information about the existence, possession, or authenticity of documents. Hubbell, 530 U.S. at 37. Whether the act of production is testimonial depends on the particular circumstances. Fisher, 425 U.S. at 410.

Pallante must produce the requested documents in her possession which were created by third parties. The act of producing such documents does not compel her to be a witness against herself about their existence, possession, or authenticity. Id. at 410-13; see also Carlin, 2006 WL 2619800, at *3. The documents, by definition, are not her work product or creation, and thus she in no way is vouching for them or making an admission about their contents. As the Supreme Court in Fisher explained, "It is doubtful that implicitly admitting the existence and possession of the papers [created by a third party] rises to the level of testimony within the protection of the Fifth Amendment." 425 U.S. at 411. There is no reliance on the "truth-telling" of Pallante to prove the existence of or her possession of these documents. Id. Finally, Pallante's production would not verify the authenticity of any third-party documents because she is not competent to attest to their authenticity. Id. at 413.

In contrast, the act of producing documents unknown to Lloyd's and created by Pallante herself would have a compelled testimonial aspect, since her production would impliedly admit that the documents exist, that they are in her possession or control, and that they are authentic. Carlin, 2006 WL 2619800, at *3. Here, an act of production would infringe her privilege against self-incrimination under the Fifth Amendment. Pallante

cannot be compelled to produce such documents unknown to Lloyd's.  Lloyd's appears to know nothing about the existence of any assets other than Pallante's real estate, automobiles, bank accounts, and one brokerage account.  To the extent Lloyd's is aware of any other of her assets, the documents related to them and created by Pallante, of course, must be produced.

Accordingly, the motion of Lloyd's to compel is granted in part and denied in part.  Pallante must provide the ordered discovery on or before May 7, 2019.

At this time, we will deny Lloyd's motion without prejudice insofar as it seeks sanctions against Pallante.  Should she fail to provide the discovery required, Lloyd's may renew its motion.

## REQUESTS

1. All books, records, logs, journals, checkbooks, canceled checks, notes, statements, or any other documents reflecting deposits, withdrawals and balance of any checking account, savings account, certificate of deposit, money market account, mutual fund account, credit card account or line of credit in which you have or have had any interest, whether individually or with third parties.

2. All deeds, contracts for deed, partnership agreements, limited partnership agreements, contracts for purchase or sale of real property, leases, books, records, journals, logs, notes, mortgages, appraisals or other documents reflecting the existence or value of any interest of any nature held by you in any real property or fixtures, including records and documents of any conveyance or transfer of any interest in real property made by you, including, but not limited to the recent sale(s) and/or purchase(s) made by you of the real property located at 833 S. 3rd Street, Philadelphia, PA 19147; 835 S. 3rd Street, Philadelphia, PA 19147; 243 8th St. S, Brigantine, NJ 08203; and 30909 Wooley Ct., Wesley Chapel, FL 33543.

3. All mortgages or any other documents reflecting any security interest of any party in any interest in real property held by you, either individually or with other parties, including, but not limited to the property you own located at 30909 Wooley Ct., Wesly Chapel, FL 33543.

4. All certificates of title, bills of sale, invoices, correspondence, certificates of authenticity, or other documents reflecting ownership or other interests held by you, either individually or with other parties, in any motor vehicle, mobile home, boat, vessel, art, antiques, furniture, stamps, coins, or other article of personal property.

5. All stocks, bonds, coupons, promissory notes, mortgages, savings bonds, treasury bills, or other securities owned by you, or in which you have any interest, either individually or with other parties, together with all correspondence, notes, memoranda, books, records or any other documents reflecting ownership or value of any interest held in any of the foregoing by you, either individually or with other parties.

6. All books, records, journals, ledgers, federal or state income tax returns, IRS Forms W-2, 1099 or K-1, payroll check stubs, or any other documents reflecting salaries, bonuses, compensation, distributions or income received by you since 2000.

7. All books, records, stock certificates, correspondence, notes, memoranda or other information relating to any ownership interest held by you in any business.

8. Any partnership, limited partnership or trust agreements to which you have been a party.

9. All intangible personal property tax returns which you have filed since 2000.

10. All income tax returns which you have filed since 2013.

11. All security agreements, pledge agreements and any other documents evidencing security interests in and personal property, choses in action, intangibles, and accounts receivable owned by you.

12. All notices of commencement, construction contracts, architects' contracts or subcontracts relating to improvements to real property owned by you.

13. Copies of all financial statements or balance sheets prepared by you or on your behalf.

14. All insurance policies entered into and any documents concerning such policies, insuring against liens to any property owned by you.

15. All documents reflecting outstanding accounts receivable that third parties are obligated to pay to you.

16. All documents reflecting safe deposit boxes currently rented by or accessible to you.

17. All life insurance policies and information relating to those policies entered into by you.

18. All documents reflecting your current monthly living expenses, including expenditures for housing, utilities, food, clothing, transportation and insurance since 2014.

19. All documents reflecting court proceedings, including lawsuits, bankruptcies, estate proceedings or other matters, to which you are or have been a party.

20. All documents including wills and trust documents, reflecting inheritances or gifts you have received or are entitled to receive.

21. All documents reflecting federal social security benefits paid to you.

22. All documents reflecting payments to you by pension or vacation funds.

23. All documents reflecting payments to you by state unemployment or workers' compensation agencies.

24. All employment agreements to which you are a party.

25. All documents regarding any entity in which you have or had an ownership interest.

26. All trust documents for any trust in which you have a beneficial interest.